

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JAN 23 2023
ARTHUR JOHNSTON
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**DAVID SMITH-GARCIA**                                                                                             **Plaintiff**

vs.   Case No. 3:23-cv-58-HTW-LGI

**EMMETT RAY ATWOOD**
**DAVID GARLAND ATWOOD**                                                                                 **Defendants**

### RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) COMPLAINT FOR DAMAGES

COMES NOW, the Plaintiff, David Smith-Garcia, pro se, and for a cause of action would show as follows:

### JURISDICTION:

1. This case arises under the 18 U.S.C. 1964(c) giving this Court jurisdiction.

### VENUE:

2. Venue is proper in this Court pursuant to 28 U.S.C. 1391 as the acts and omissions given rise to this suit occurred in this judicial district.

### PARTIES:

3. Plaintiff David Smith-Garcia is an adult resident of Mississippi whose mailing address is: P.O. Box 3053, Madison, MS 39130.

4. Defendant Emmett Ray Atwood is an adult resident of Mississippi whose mailing address is: 198 Woodbine Drive, Vicksburg, MS 39180.

5. Defendant David Garland Atwood is an adult resident of Mississippi whose mailing address is: 5405 Warriors Trail, Vicksburg, MS 39180.

**FACTS:**

6. Defendant Emmett Ray Atwood is the biological grandfather of Plaintiff David Smith-Garcia.

7. Defendant David Garland Atwood is the biological father of Plaintiff David Smith-Garcia.

8. On 08/13/1983, the Plaintiff was born and given the name David Garland Atwood, II. In July 2017 the Plaintiff legally changed his name to David Smith-Garcia.

9. The Plaintiff's parents divorced when he was approximately seven-years-old and the Plaintiff lived with his father, Defendant David Garland Atwood (hereafter Defendant DGA) from the time he was about eight-years-old until he was approximately thirteen-years-old.

10. During a significant portion of the time that the Plaintiff lived with Defendant DGA, Defendant DGA viciously and repetitively physically and sexually abused the Plaintiff. This resulted in the Plaintiff finally reporting the sexual abuse in the summer of 1997 and being moved out of Defendant DGA's residence.

11. Since the summer of 1997, the Plaintiff has had little or no contact with Defendant DGA.

12. In approximately 1955, Defendant Emmett Ray Atwood (hereafter Defendant ERA) incorporated and opened Atwood Chevrolet, Oldsmobile, Inc., in Vicksburg, Mississippi (hereafter Atwood Chevrolet). The postal mailing address for Atwood Chevrolet was Post Office Box 79, Vicksburg, Mississippi, 39180. This business was a new and used car dealership.

13. Defendant DGA also has incorporated and acquired numerous other businesses.

14. In the early to mid-1990s, Defendant ERA placed partial ownership of Atwood Chevrolet in Defendant DGA's name.

15. In February 1995, Defendant ERA allegedly purchased 100 shares of Entergy Corporation stock, placed those shares in the Plaintiff's name under the Mississippi Uniform Gift (Transfers) to Minors Act, and named Defendant DGA as the custodian of the Entergy stock.

16. The Plaintiff believes, and specifically asserts, that the funds used to purchase the Entergy stocks were given to the Defendants by the Plaintiff's great-grandparents, Roscoe and Francis Quinn, specifically to be invested for the Plaintiff's benefit. The Defendants have denied this in state court litigation.

17. At no time did either Defendant ever inform the Plaintiff that these 100 shares of Entergy stock had been gifted to him under the Uniform Gifts/Transfers to Minors Act (hereafter UGMA and/or UTMA), nor did the Defendants ever provide the Plaintiff with any of the Entergy dividend payments made by Entergy.

18. Since February 1995, Entergy has issued quarterly dividend payments in the Plaintiff's name. These Entergy dividend checks were mailed to Defendant ERA at Atwood Chevrolet's Post Office Box 79.

19. These Entergy checks were mailed across state lines from various stock transfer companies.

20. Defendant ERA would then provide the Entergy dividend checks to Defendant DGA, who would then deposit them in various financial accounts, including financial accounts belonging to Atwood Chevrolet.

21. The Entergy checks were made payable to: "David G. Atwood Cust [Custodian] David G. Atwood II Under the MS Gift To Min Act."

22. Defendant DGA would endorse the Plaintiff's name on the checks and then deposit them.

23. Based on best information and belief, every three months, Entergy issued these dividend checks. They were received at the Post Office Box 79 by both Defendants. And for more than 25-years, Defendant DGA would endorse the Plaintiff's name to these checks when they were received, and then deposit them into a multitude of different bank accounts.

24. Defendant DGA has signed and endorsed the Plaintiff's name to these Entergy checks more than 90 times from February 1995 to July 2021.

25. Defendant DGA has deposited the Entergy dividend checks into a multitude of financial accounts more than 90 times from February 1995 to July 2021.

26. Both Defendants eventually spent the proceeds from these Entergy checks that were issued in the Plaintiff's name or laundered the money through various personal and business bank accounts in an effort to conceal the funds from the IRS and Plaintiff.

27. Both Defendants have also, based on information and belief, taken the proceeds from the Entergy checks and wired the money to different bank accounts in order to conceal the source of the funds.

28. Both Defendants have also, based on information and belief, taken the proceeds from the Entergy checks and reinvested those proceeds into Atwood Chevrolet and

numerous other business ventures owned and controlled by the Defendants, including purchasing real estate in Hinds, Sharkey, and Warren Counties.

29. Based on best information and belief, the Defendants have spent approximately $9,000.00 of the money issued in the Plaintiff's name from the Entergy account. Had the Defendants properly invested and reinvested the Entergy dividend payments into purchasing more Entergy stock at the time the dividend payments were issued, the Plaintiff would currently have in excess of 308 shares of Entergy stock worth well over $32,000.00.

30. Both Defendants have, since the Plaintiff turned 21-years-old, falsely called, e-mailed, and written letters to Entergy and the various stock transfer agents claiming to be the Plaintiff, and using the Plaintiff's identity, to continue receiving and cashing the stock dividend checks.

31. According to Mississippi's UGMA/UTMA statutes, both Defendants were required to "collect, hold, manage, invest, and reinvest custodial property." (MCA 91-20-25(1)(c)). However, neither Defendant complied with this specific statute and did not collect, hold, manage, invest or reinvest the Entergy proceeds.

32. Both Defendants were also required to "keep custodial property separate and distinct from all other property in a manner sufficient to identify it clearly as custodial property of the minor (MCA 91-20-25(4)) and to "keep records of all transactions with respect to custodial property" (MCA 91-20-25(5)). However, both Defendants have admitted in state court proceedings that they did not keep the Entergy dividends payments separate from their own funds and did not keep records of any transactions.

33. Based on best information and belief, Defendants destroyed all records of these transactions to prevent the RICO enterprise scheme from being discovered.

34. When the Plaintiff turned 21-years-old on 08/13/2004, the Defendants were required to immediately transfer the Entergy stocks and dividend payments solely into the Plaintiff's name and control. (MCA 91-20-41). The Defendants were also required to

turn over the Entergy stocks and collected dividend payments to the Plaintiff on his twenty-first birthday. (Id). However, neither Defendant transferred the Entergy stocks to the Plaintiff's name, nor did they turn over to the Plaintiff's the dividend funds.

35. After the Plaintiff turned 21-years-old on 08/13/2004, the Entergy stocks, by law, automatically should have passed into his sole possession, control, and ownership.

36. From August 2004 until July 2021 when this fraud and embezzlement was discovered, both Defendants continued receiving Entergy stock dividend payments, Defendant DGA continued endorsing the Plaintiff's name to the checks, depositing them into various bank accounts, and spending the money.

37. The Plaintiff only discovered the Defendants' crimes when Defendant ERA's wife, Camille Atwood, noticed that checks issued in the Plaintiff's name were being received by Defendant ERA. Camille then provided these checks and account statements to the Plaintiff through the Plaintiff's mother, Joan Campbell. According to Camille, Defendant ERA currently suffers from dementia and could not inform her of the reason that he was receiving Entergy and other stock checks issued in the Plaintiff's name.

38. At no time did the Defendants list or claim the proceeds they derived from the Entergy stocks on their income tax returns. By all accounts, both Defendants deliberately and intentionally concealed this income.

39. In addition to the Entergy stocks, it is believed and specifically asserted that Defendant ERA purchased additional stocks, bonds, property, and made other investments in the Plaintiff's name under the UGMA/UTMA statutes and has continued to conceal those assets from the Plaintiff.

40. Based on best information and belief, both Defendants took untaxed money earned from Atwood Chevrolet, purchased land, bonds, mutual funds, and precious metals in the Plaintiff's name under UGMA/UTMA, and have been deriving an income, without reporting it to the IRS, from the proceeds of those investments.

41. Sometime prior to July 2005, based on the Plaintiff's best information and belief, Defendant ERA made purchases of Aegon, Mr. Cooper Group, and Washington Mutual stock under the UGMA/UTMA statutes using the Plaintiff's name, with Defendant DGA as the custodian, but never informed the Plaintiff of these stocks or provided the dividend payments to him.

42. Based on discovery obtained in state court litigation, it is apparent that both Defendants operated a Racketeer Influenced Corrupt Organization (RICO) scheme to take untaxed money and property, place the property in the Plaintiff's name under the UGMA/UTMA statutes, and then derive an untaxed income from their scheme.

43. According to Plaintiff's best information and belief, for more than thirty years the Defendants have taken untaxed money from proceeds derived from the Atwood Chevrolet business, used that untaxed money to purchase stocks, property, and other investments under the UGMA/UTMA statutes to avoid tax penalties, and then used the income derived from those investments to live on without reporting any of this income to the IRS.

44. In taking the Entergy dividend checks, endorsing their names on the checks, depositing those checks in their personal and business bank accounts, spending the money, and concealing the income from the IRS and Plaintiff, the Defendants have violated the predicate RICO statutes of mail fraud (18 U.S.C. 1341), wire fraud (18 U.S.C. 1343), and money laundering (18 U.S.C. 1956).

45. By impersonating the Plaintiff, assuming his identity, and communicating through the mails with the stock companies, investment firms, transfer agents, and banks, the Defendants have violated the 18 U.S.C. 1341 mail fraud statutes.

46. The Defendants have violated the 18 U.S.C. 1341 mail fraud statute by setting up a scheme to receive financial checks through the mails, specifically at Post Office Box 79, that were issued in the Plaintiff's name, and which solely belonged to the Plaintiff, and then taking those checks, from February 1995 to July 2021, signing and

endorsing the Plaintiff's name, depositing those checks into one of their personal or business bank accounts, and then laundering the funds.

47. By taking the funds belonging to the Plaintiff, and wiring that money through multiple bank accounts, for the specific intent of concealing the funds from the IRS and Plaintiff, to launder the money so that it becomes untraceable, and to evade paying IRS taxes, the Defendants violated the 18 U.S.C. 1343 wire fraud statute.

48. The Defendants violated the 18 U.S.C. 1956 money laundering statute by taking the wrongfully and illegally received investment funds belonging to the Plaintiff, depositing them into a myriad number of bank accounts, and then laundering the money into different accounts and other investment schemes, for the purpose of concealing the money from the Plaintiff and to evade paying taxes on the income derived from the RICO enterprise.

49. The Defendants have also engaged in a civil conspiracy, amongst themselves and others, including Alan Quinn Atwood and Vivian June Atwood, to operate this RICO enterprise, to conceal and launder money through Atwood Chevrolet, and to evade taxes on income earned from the RICO enterprise.

**CAUSES OF ACTION:**

### COUNT ONE
### VIOLATION OF RICO STATUTE 18 U.S.C. 1962(a)

50. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 49 of this Complaint.

51. The Defendants violated RICO statute 18 U.S.C. 1962(a) by investing portions of the Entergy stocks and dividend payments, and the other investments, wrongfully taken

from the Plaintiff, into Atwood Chevrolet, a business affecting and engaged in interstate commerce.

## COUNT TWO
## VIOLATION OF RICO STATUTE 18 U.S.C. 1962(b)

52. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 51 of this Complaint.

53. The Defendants violated RICO statute 18 U.S.C. 1962(b) by maintaining an interest in Atwood Chevrolet using the proceeds from the Plaintiff's Entergy stocks and dividend payments, after engaging in a pattern of racketeering activity, including mail fraud, wire fraud, and money laundering.

## COUNT THREE
## VIOLATION OF RICO STATUTE 18 U.S.C. 1962(c)

54. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 53 of this Complaint.

55. The Defendants violated RICO statute 18 U.S.C. 1962(c) by engaging in a pattern of racketeering activity, including violating the mail fraud, wire fraud, and money laundering statutes, while owning and being employed by Atwood Chevrolet.

## COUNT FOUR
## VIOLATION OF RICO STATUTE 18 U.S.C. 18 U.S.C. 1962(d)

56. The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 55 of this Complaint.

57. The Defendants violated RICO statute 18 U.S.C. 1962(d) by conspiring together, and with others, including Alan Quinn Atwood and Vivian June Atwood, to deprive the Plaintiff of his income, Entergy stocks and dividend payments, and other investments through a pattern of racketeering activity.

## **PRAYERS FOR RELIEF:**

58. A judgment in the Plaintiff's favor on all claims;

59. A jury trial on all claims;

60. Preliminary and permanent injunctive relief to be set forth in a future motion;

61. Compensatory damages in an amount to be determined at trial, including treble damages as allowed by 18 U.S.C. 1964(c);

62. Emotional distress and mental anguish damages in the amount of $4,000,000.00;

63. Punitive damages in the amount of $10,000,000.00;

64. Any and all available interest;

65. Restitution to the Plaintiff of all money, property, and benefits the Plaintiff was unlawfully defrauded and deprived of by the Defendants;

66. Costs and expenses in bringing this lawsuit; and

67. Any and all other relief that the Plaintiff may be entitled.

Respectfully Submitted, this the 23rd day of January, 2023.

_____
DAVID SMITH-GARCIA

David Smith-Garcia
P.O. Box 3053
Madison, MS 39130
LawLinkMS@gmail.com
769-268-9835